IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:19 CV 145

| | |
|---|---|
| CLINTON ALLEN MCDONALD </br></br> Plaintiff, </br></br> v. </br></br> NANCY A. BERRYHILL, </br> Acting Commissioner of the Social </br> Security Administration, </br></br> Defendant. | MEMORANDUM AND </br> RECOMMENDATION |

This matter is before the Court on the parties' cross motions for summary judgment (Docs. 15, 16), which have been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B). Following a review of the record, the parties' briefs, and relevant legal authority, the undersigned respectfully recommends that Plaintiff's motion for summary judgment be denied and the Commissioner's motion for summary judgment be granted.

I. Procedural History

On October 26, 2016, Plaintiff filed applications for disability insurance benefits and supplemental security income. Transcript of Administrative Record ("AR"), pp. 330-338. Plaintiff's claims were initially denied on February 9, 2017, and subsequently upon reconsideration. AR pp. 204-205 & 256-267. Plaintiff thereafter filed a written request for a hearing and a hearing was held

1

on July 23, 2018, in Hartford, Connecticut, where Plaintiff appeared and testified. AR pp. 146-179.[1] Plaintiff was represented by counsel at the hearing.

On August 1, 2018, the Administrative Law Judge ("ALJ") issued an unfavorable decision. AR pp. 8-20. The Appeals Council denied Plaintiff's request for review of that decision on March 12, 2019. AR pp. 1-5.

On March 25, 2019, Plaintiff, appearing *pro se*, filed the instant action. Doc. 1. Accordingly, Plaintiff exhausted his administrative remedies before timely filing this action and the ALJ's decision is the Commissioner's final decision for purposes of judicial review. See 20 C.F.R. § 404.981.

## II. The Five-Step Process

A claimant has the burden of proving that he or she suffers from a disability, which is defined as a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1505; 416.905. The regulations require the Commissioner to evaluate each claim for benefits using a five-step sequential analysis. 20 C.F.R. §§ 404.1520; 416.920. In this process, the Commissioner considers each of the following: (1) whether the claimant has engaged in substantial gainful employment; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment is sufficiently

---

1 At the time, Plaintiff lived in Connecticut, having moved there from Texas. AR p. 152. Plaintiff currently lives in Charlotte, North Carolina. Doc. 1.

severe to meet or exceed the severity of one or more of the impairments listed in Appendix I of 20 C.F.R. Part 404, Subpart P; (4) whether the claimant can perform his or her past relevant work; and (5) whether the claimant is able to perform any other work considering his or her age, education, and residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520, 416.920; Mastro v. Apfel, 270 F.3d 171, 177 (4th Cir. 2001); Johnson v. Barnhart, 434 F.3d 650, 653 n.1 (4th Cir. 2005) (per curiam).

The burden rests on the claimant through the first four steps to prove disability. Monroe v. Colvin, 826 F.3d 176, 179 (4th Cir. 2016). If the claimant is successful at these steps, then the burden shifts to the Commissioner to prove at step five that the claimant can perform other work. Mascio v. Colvin, 780 F.3d 632, 635 (4th Cir. 2015); Monroe, 826 F.3d at 180.

### III. The ALJ's Decision

The ALJ determined that Plaintiff had the severe impairments of "post traumatic stress disorder, general anxiety disorder, major depressive disorder and diabetes mellitus." AR p. 14. The ALJ further found that Plaintiff had the RFC to

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant is limited to simple, routine and repetitive tasks in an environment that does not require interaction with the general public.

AR p. 15.

Utilizing this RFC, the ALJ found that Plaintiff was able to perform his past relevant work as a photocopy machine operator. AR p. 20. The ALJ also found that Plaintiff could perform other work, including the representative occupations of laundry aide, hand packager and inspector, and palletizer such that Plaintiff was not disabled from September 1, 2016 (Plaintiff's alleged disability onset date) through August 1, 2018 (the date of the ALJ's decision). AR p. 22.

## IV. Standard of Review

Under 42 U.S.C. § 405(g), judicial review of a final decision of the Commissioner denying disability benefits is limited to two inquiries: (1) whether substantial evidence exists in the record as a whole to support the Commissioner's findings, and (2) whether the Commissioner's final decision applies the proper legal standards. Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006) (quoting Mastro, 270 F.3d at 176). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal quotation marks omitted). It is more than a scintilla but less than a preponderance of evidence. Id.

When a federal district court reviews the Commissioner's decision, it does not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id. Accordingly, the

4

issue before the Court is not whether Plaintiff is disabled but, rather, whether the Commissioner's decision that he is not disabled is supported by substantial evidence in the record and based on the correct application of the law. Id.

V. Analysis

### A. Plaintiff's Allegations of Error

Although Plaintiff's briefing is not entirely clear, Plaintiff appears to raise three primary arguments. First, Plaintiff asserts that the vocational expert ("VE") testified that Plaintiff was unable to work. Second, Plaintiff argues that the ALJ misconstrued and/or failed to consider certain medical records and improperly weighed the various medical opinions in the administrative record. Third, Plaintiff contends that the jobs the ALJ determined Plaintiff could perform are inconsistent with Plaintiff's RFC.[2]

### B. The VE's Testimony

Plaintiff argues that during the July 23, 2018 hearing, the VE testified that there were "no jobs for the Plaintiff to work at all" and that "[t]his should be the end of it…." Doc. 15, pp. 1-2. This characterization of the VE's testimony, however, is not completely accurate.

During the hearing, the VE testified that a hypothetical claimant of Plaintiff's age, education, and past work history who was limited to "simple,

---

2 This third argument appears in Plaintiff's "Memorandum in Dispute of the Commissioner's Motion for Summary Judgment." Doc. 18.

5

routine, repetitive tasks" and who had no contact with the public would be able to perform the job of photocopying machine operator. AR p. 173. The VE further testified that such an individual could perform this work with the additional limitation that he work at the "light exertional level." AR p. 174. The VE testified that a person with these limitations would also be able to engage in the representative occupations of laundry aide, hand packager and inspector, and palletizer. AR p. 174.[3]

The ALJ then asked the VE if such an individual who, "because of extreme pain and numbness and fatigue," had to take additional breaks such that he was not working "more than 10 percent of the time in addition to lunch and regular breaks" would be precluded from work at the unskilled level. AR p. 175. The VE testified that such limitations would preclude such an individual from engaging in all work. Id.

Thereafter, in response to questions posed by Plaintiff's counsel, the VE testified that a person who was absent more than 2 days a month would be precluded from all work, as would a person with "no ability to accept instructions and respond appropriately to criticism from supervisors" or a person with "no ability to deal with normal work stress." AR pp. 176-177.

Plaintiff is correct that the VE testified that a hypothetical claimant with

---

3 The VE explained that a palletizer is "someone who stacks and wraps pallets." AR p. 175.

certain limitations would be precluded from all work. However, the ALJ did not include all of those limitations in Plaintiff's RFC.

The omission of additional limitations from a claimant's RFC does not require remand, unless the ALJ's decision to omit the limitations is not supported by substantial evidence. See Mickles v. Shalala, 29 F.3d 918, 929, n. 7 (4th Cir. 1994) (explaining that hypothetical posed to VE properly included all of the exertional and non-exertional limitations the ALJ found to exist, and that further limitations which would have, if accepted, precluded claimant's ability to work did not result in a defect in the hypothetical posed to the VE because substantial evidence supported the ALJ's determination that such additional limitations were not credible).

Here, and as discussed below, substantial evidence supports the ALJ's development of Plaintiff's RFC based on Plaintiff's medical records and the opinion evidence. The additional limitations that would preclude all work – excessive breaks, excessive absenteeism, and no ability to work in proximity to others – appear to be limitations proposed in opinion evidence to which the ALJ assigned little weight.[4]

---

[4] See AR p. 635 (Dr. Pillai questionnaire opining that Plaintiff would need breaks every fifteen minutes and would be absent more than 2 times each month); p. 640 (Escoriza questionnaire opining that Plaintiff has poor ability to work in coordination with others); p. 507 (Dr. Gerwell evaluation opining Plaintiff's "ability to maintain effective social interaction on a consistent and independent basis with supervisors, co-workers, and the public, or deal with normal pressures in a competitive work

7

### C. Evaluation of Plaintiff's Medical Records and the Opinion Evidence

RFC is defined as "the most [a claimant] can do despite [his or her] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). SSR 96-8p, 1996 WL 374184 (July 2, 1996), provides that an ALJ's RFC "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g. daily activities, observations)." Id. at *7. The Commissioner is responsible for determining the claimant's RFC based on all the relevant evidence. Johnson, 434 F.3d at 653. In formulating an RFC, an ALJ is not required to discuss every piece of evidence. See Reid v. Comm'r of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014). An ALJ is, however, required to build a logical bridge from the evidence of record to his conclusion. Monroe, 826 F.3d at 189; see also Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000).

Here, in determining Plaintiff's RFC, the ALJ considered Plaintiff's medical records as well as the opinions of Dr. Omprakash Pillai, Plaintiff's primary care provider; Juan Escoriza, a mental health clinician; Dr. Joshua Goldman, a neurologist who conducted a physical consultative examination ("CE") of Plaintiff; Dr. Kristine Gerwell, who conducted a psychological CE; and Dr. Darrell Parisher, who conducted a clinical interview with Mental

---

setting is below average.").

Status Examination ("MSE"). Plaintiff asserts that the ALJ's decision is biased and inconsistent, that the Commissioner failed to consider certain medical records, and that the ALJ "went against 4 of 5 doctor's opinions that evaluated plaintiff…." Doc. 15, pp. 2-3. The undersigned construes these arguments as raising the question of whether substantial evidence supports the ALJ's analysis of Plaintiff's medical records and the opinion evidence.

### 1. Alleged "New" Medical Records

To his Motion for Summary Judgment, Plaintiff attached portions of the July 23, 2018 hearing transcript and the ALJ's decision annotated with Plaintiff's handwritten notes. He also attached over 100 pages of medical records including records from Dr. Skop, a psychiatrist, that he contends were missing from the administrative record. Doc. 15-1.

Plaintiff's position conflicts with representations made to the ALJ, however; during the July 23, 2018 hearing, Plaintiff's counsel stated that all records had been received and that the decision could be made on a closed record. See AR pp. 149-150.

In addition, even assuming the medical records attached to Plaintiff's Motion for Summary Judgment were not considered by the ALJ, this fact would not be a basis for remand. A federal court "may order that additional evidence be taken before the Commissioner upon a showing that there is new, material evidence and that good cause exists for the failure to incorporate such

9

evidence into the record in the prior proceedings. The burden of showing that the evidence satisfies these three requirements rests with the Plaintiff." Bettie v. Colvin, No. 12-cv-25-MOC-DLH, 2013 WL 5849147, at * (W.D.N.C. Oct. 30, 2013) (internal citations omitted).

Here, Plaintiff has not shown that the records attached to his Motion for Summary Judgment are material in this regard because they are consistent with the treatment records that were included in the administrative record. See Finney v. Colvin, 637 Fed. Appx. 711, 716 (4th Cir. 2016) ("the claimant must establish that the evidence is material, in that the Commissioner's decision 'might reasonably have been different' had the new evidence been before her.") (citations omitted). Further, Plaintiff has not shown that good cause exists for the failure to incorporate this evidence into the record during prior proceedings.

## 2. Plaintiff's Medical Records

With respect to Plaintiff's medical records that relate to his diabetes, the ALJ found "the claimant's routine/conservative treatment history as well as mild clinical findings is inconsistent with the level of limitation alleged." AR p. 17. Plaintiff's records show that when treated, Plaintiff's diabetes improved, and that Plaintiff's related foot complaints were conservatively treated.[5]

---

5 See e.g., AR p. 478 (September 19, 2016 treatment note; Plaintiff reported blurred vision, frequent urination, burning and numbness in extremities but also reported no

10

Case 3:19-cv-00145-MOC-WCM   Document 19   Filed 01/08/20   Page 10 of 20

Likewise, when discussing Plaintiff's mental health complaints, the ALJ concluded that "the claimant's lack of consistent treatment and generally mild mental status examination findings do not support greater limitations than found in this decision." AR p. 18. A review of the administrative record shows that Plaintiff consistently presented on mental status exam ("MSE") within normal limits notwithstanding complaints of feeling depressed.[6]

Accordingly, substantial evidence supports the ALJ's consideration of Plaintiff's treatment records related to both his diabetes and mental health complaints.

---

treatment for over a year and a half.); p. 496 (November 10, 2016 treatment note indicating Plaintiff's problems were "improving," that "pertinent negatives" included blurred vision, burning of extremities, and frequent urination with assessment of Type 2 diabetes without complication); p. 527 (February 17, 2017 treatment note wherein Plaintiff's assessment is type 2 diabetes without complication and Plaintiff denies blurred vision or burning extremities); p. 581 (January 13, 2018 progress note assessing type II diabetes without complication, tinea pedis of both feet but normal podiatry exam); p. 623 (May 21, 2018 progress note indicating Plaintiff reported his toes were numb, on exam feet were within normal limits but soles of shoes were worn out consistent with location of pain and Plaintiff was referred to podiatry); p. 45 (June 6, 2018 note indicating Plaintiff's diabetes improving).

6 See e.g., AR p. 118 (MSE notes depressed mood and flat affect; clear speech; logical thought process; average intelligence; thought content, insight, cognition, and judgment within normal limits; ; normal concentration.); p. 123 (December 14, 2016 MSE notes depressed mood with constricted affect; clear speech; logical thought process; average intelligence; and normal thought content, cognition, insight, and judgment); p. 137 (June 5, 2017 treatment note indicating that on MSE, Plaintiff's mood was euthymic; speech clear; thought process logical; perception, cognition, insight, judgment, cognition all within normal limits; with average intelligence.).

### 3. The Opinion Evidence

"An ALJ's determination as to the weight to be assigned to a medical opinion generally will not be disturbed absent some indication that the ALJ has dredged up some 'specious inconsistencies,' or has failed to give a sufficient reason for the weight afforded a particular opinion." Dunn v. Colvin, 607 F. App'x 264, 267 (4th Cir. 2015) (internal citations omitted); see also 20 C.F.R. §§ 404.1527(c)(6), 416.927(c)(6) (providing an example of other factors to be considered when weighing a medical opinion); 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion. The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion.").

Treating sources are generally given controlling weight with respect to the nature and severity of a claimant's impairment. 20 C.F.R. §§ 404.1527(c), 416.927(c). However, when a treating source's opinion is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with other substantial evidence in the case record," it is not entitled to controlling weight. SSR 96-2p, 1996 WL 374188, at *4. In such a case, the treating source's opinion must be weighed and evaluated pursuant to the factors set forth in 20 C.F.R. §§ 404.1527(c)(2)(i)-(c)(6), 416.927(c)(2)(i)-

12

(c)(6). Ivey v. Berryhill, No. 3:18-CV-075-DCK, 2019 WL 1413756, at *7 (W.D.N.C. Mar. 28, 2019); Bush v. Berryhill, No. 1:17CV872, 2019 WL 699349, at *3 (M.D.N.C. Feb. 20, 2019).

The ALJ "accorded little weight" to the level of limitations set out in a diabetes mellitus questionnaire completed by Dr. Pillai, Plaintiff's primary care physician, on June 30, 2018. See AR pp. 18 & 632-635. In that questionnaire, Dr. Pillai opined that Plaintiff could continuously sit for 2 hours; continuously stand for 1 hour; required fifteen-minute breaks every 2 hours; had significant limitations in doing repetitive reaching, handling or fingering; could safely lift less than 10 pounds; and would be absent from work more than twice a month. AR pp. 634-635. The ALJ found that the level of limitation in Dr. Pillai's opinion was "inconsistent with the physical examination findings documented within the records." AR p. 18. In so finding, the ALJ noted that no ambulation difficulties had been documented in Plaintiff's treatment records, nor had there been any findings "of difficulty using the upper extremities." AR p. 18. Dr. Pillai's own treatment notes support the ALJ's conclusion.[7]

---

[7] See AR p. 469 (December 23, 2015 treatment note from Dr. Pillai indicating on physical exam, all four extremities were normal); p. 559 (Dec. 14, 2017 Dr. Pillai treatment note reflecting on general exam no clubbing or edema in extremities, normal and full range of motion in back, and normal upper and lower extremity motor strength); p. 589 (Dr. Pillai March 15, 2018 treatment note reflecting Plaintiff had normal upper and lower extremity strength, normal/full range of motion in back, and was started on foot cream); p. 45 (June 6, 2018 Dr. Pillai treatment note indicating

13

Similarly, the ALJ afforded "little weight" to the Mental Medical Opinion questionnaire completed by Juan Escoriza. See AR pp 18-19 & 639-641. While Mr. Escoriza opined that Plaintiff's "mental health limits his ability to maintain a job successfully," and that Plaintiff had "poor to [no]" ability to perform a number of work related tasks (including tasks related to concentration and interacting with others), the ALJ correctly noted that Plaintiff's treatment records failed to document deficits in attention, concentration, orientation, or cognition. AR p. 19.[8]

The ALJ also assigned "little weight" to the opinion of Dr. Kristine Gerwell, who performed a psychological CE. AR pp. 19-20 & 504-508. Dr. Gerwell reported that Plaintiff drove himself to the evaluation, that he appeared appropriately groomed and dressed, was cooperative, and that he

---

normal upper and lower extremity strength and assessing, *inter alia*, diabetes "improving;"); p. 40 (Dr. Pillai June 30, 2018 treatment note reflecting normal gait on physical exam).

8 See supra, n. 6. See also AR p. 36 (Juan Escoriza progress note indicating that on MSE, Plaintiff's general knowledge, memory, insight, and judgment were intact and Plaintiff's thought content was logical/coherent); p. 52 (Escoriza May 21, 2018 progress note; on MSE, affect is appropriate, attitude cooperative, general knowledge intact, appropriate eye contact, judgment and memory intact, thought content logical and coherent, mood is anxious and depressed.); p. 55 (Escoriza June 6, 2018 treatment note; on MSE, affect is appropriate; attitude cooperative; general knowledge intact; appropriate eye contact; judgment and memory intact; thought content is logical and coherent; mood is anxious and depressed.); p. 58 (Escoriza July 2, 2018 treatment note reflecting Plaintiff's affect is appropriate, attitude cooperative, general knowledge intact, eye contact appropriate, judgment and memory intact, thought content logical and coherent, mood is anxious and depressed.).

made good eye contact. AR p. 504.[9] Plaintiff reported to Dr. Gerwell that he was able to bathe and dress himself, could assist in cleaning and maintaining his residence, could drive, prepare simple meals, handle his finances, and complete grocery shopping. AR p. 505. Although Dr. Gerwell stated in her CE report that Plaintiff had "moderate to severe difficulties with memory," she also reported that Plaintiff "appeared to be able to concentrate adequately" and maintained a "stable pace." AR p. 505. Regarding Plaintiff's functional capacity, Dr. Gerwell opined that Plaintiff "can understand, carry out and remember instructions both complex and one-two step. He can sustain concentration. He cannot persist in work-related activity at a reasonable pace. His ability to maintain effective social interaction on a consistent and independent basis with supervisors, co-workers, and the public, or deal with normal pressures in a competitive work setting is below average." AR p. 507.

In assigning little weight to Dr. Gerwell's functional capability evaluation, the ALJ pointed out inconsistencies between Dr. Gerwell's report and opinion,[10] and also explained that Plaintiff had "stated he is able to

---

9 Dr. Gerwell additionally reported that Plaintiff's gait was normal and that he showed no evidence of any orthopedic impairment. AR p. 504.

10 See AR p. 19 ("Dr. Gerwell's report indicated findings of memory deficits, yet she opined no limitation of the claimant's ability to remember complex or one-two step instructions. Similarly, her report stated that the claimant demonstrated a stable pace, yet she opined that the claimant cannot maintain an adequate pace.").

prepare simple meals, navigate the public transportation system and manage his own finances." AR pp. 19-20.

In contrast to the weight assigned to the opinions of Dr. Pillai, Mr. Escoriza, and Dr. Gerwell, the ALJ assigned "great weight" to the opinions of Dr. Goldman and Dr. Parisher. AR pp. 19 & 20. With respect to Dr. Goldman, the ALJ explained that upon neurological exam, Plaintiff "demonstrated a normal gait and station, normal tandem gait and negative Rhomberg testing…" and that Dr. Goldman's test results were consistent with other evidence in the record. AR pp. 19 & 515.[11] Similarly, the ALJ explained that he afforded great weight to Dr. Parisher's findings that Plaintiff exhibited logical and coherent thought process, normal cognition, adequate concentration, and intact memory because such findings were "consistent with the claimant's more recent treatment records as well as with the claimant's self-reported activities of daily living." AR p. 20.[12]

The undersigned finds substantial evidence supports the ALJ's analysis of the opinion evidence.

### D. Conflict Between the VE Testimony and Plaintiff's RFC

Finally, Plaintiff argues that the jobs identified by the ALJ (photocopy

---

[11] See AR p. 510 (Dr. Parisher note indicating Plaintiff's posture and gait were normal); p. 42 (Dr. Pillai treatment note indicating Plaintiff's gait normal).

[12] See supra, n. 6.

16

machine operator, laundry aide, hand packager and inspector, and palletizer) are inconsistent with his RFC limitations that require light work and no interaction with the general public. Doc. 18.

The Dictionary of Occupational Titles ("DOT") and its companion publication, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* "are Social Security Administration resources that list occupations existing in the economy and explain some of the physical and mental requirements of those occupations." Pearson v. Colvin, 810 F.3d 204, 205, n. 1 (4th Cir. 2015). "[A]n ALJ must ensure that any 'apparent' conflicts between [these sources] and the VE's testimony are reasonably resolved." Thomas v. Berryhill, 916 F.3d 307, 313 (4th Cir. 2019).

According to the DOT, the occupations of photocopying-machine operator, laundry aide, hand packager and inspector, and palletizer all require the strength for "light work."[13] See DICOT 207.685-014, 1991 WL 671745 (photocopying-machine operator); DICOT 361.687-014, 1991 WL 672991 (laundry classifier/sorter/separator); DICOT 559.687-074, 1991 WL 683797 (inspector and hand packager); DICOT 929.687-054, 1991 WL 688180

---

13 The DOT descriptions define light work as "Exerting up to 20 pounds of force occasionally (Occasionally: activity or condition exists up to 1/3 of the time) and/or up to 10 pounds of force frequently (Frequently: activity or condition exists from 1/3 to 2/3 of the time) and/or a negligible amount of force constantly (Constantly: activity or condition exists 2/3 or more of the time) to move objects."

17

Case 3:19-cv-00145-MOC-WCM   Document 19   Filed 01/08/20   Page 17 of 20

(palletizer).

Although the DOT descriptions do not include requirements for public interaction, the VE testified that the identified representative occupations would not require interaction with the general public.  "[W]hen the DOT is silent on an issue—here, the level of contact required to perform a certain position—generally, no apparent conflict exists."  Beasley v. Berryhill, No. 17-cv-294-RJC, 2019 WL 1330928, at * 3 (W.D.N.C. March 25, 2019) (citing Corvin v. Berryhill, No. 5:17-CV-92-RJC-DSC, 2018 WL 3738226, at *6 (W.D.N.C. Aug. 7, 2018) ("If anything, when 'the DOT is silent, an ALJ has greater leeway to rely on the experience and testimony of a VE.'")).

Plaintiff does not directly address the DOT descriptions of photocopying-machine operator, laundry aide, hand packager and inspector, and palletizer. Instead, Plaintiff cites to descriptions for specific positions that Plaintiff contends are inconsistent with his ability to do light work with no interaction with the public.  See Doc. 18, p. 10-31.[14]

---

14 Plaintiff attaches job descriptions for Staple's Sales Associate, Copy & Print Marketing; Copy Operator for Canon Business Process, Inc.; Laundry Soiled Sorter for United Service Companies; Housekeeping/Laundry Aide for Flesher's Fairview Health Care Center; Laundry Aide for Holiday Inn Club Vacations; Cabin Cleaning Agent for GAT Airline Support; Aircraft Cleaner for ReadyJet; Forklift Operator for Sysco; Operator 1st Shift for Adams Beverages of NC, LLC; Forklift Operator/Order Puller for Brand Vaughan Lumbar Company; Packer Palletizer for BestCo; Packer/Palletizer for Rockline Industries, Inc.; Fulfillment Associate/Pick Packer for KwikSafety; and Packer for Novolex Holdings, LLC.  It appears that Plaintiff obtained at least some of these descriptions from Indeed.com.  See Doc. 18, p. 29 (indicating job posting is no longer available on Indeed).

However, the fact that specific positions may exist that have requirements purportedly inconsistent with Plaintiff's RFC does not indicate that the ALJ's reliance on the descriptions of the representative occupations set out by the DOT and as referenced by the VE's testimony was improper. See Hintersteiner v. Astrue, Civil Action No. 11-240, 2013 WL 1337375, at * 4 (S.D. W.Va. March 29, 2013) ("In the absence of any apparent conflicts, the ALJ therefore, was entitled to rely on the VE's responses."); Graves v. Colvin, 12cv643, 2015 WL 5167240, at * 6 (M.D.N.C. Sept. 3, 2015) ("The VE was qualified to determine which jobs Mr. Graves could perform, given the limitations set forth by the RFC, and the ALJ was entitled to rely on the VE's testimony."). The VE did not testify, and the ALJ did not find, that Plaintiff met the qualifications for any specific position with any individual employer (e.g., Staples) but rather that representative jobs Plaintiff could perform (e.g., photocopying-machine operator, laundry aide, hand packager and inspector, and palletizer) do exist.

## VI. Recommendation

Considering the foregoing, the undersigned **RECOMMENDS** that Plaintiff's motion for summary judgment (Doc. 15) be **DENIED** and that the Commissioner's motion for summary judgment (Doc. 16) be **GRANTED**.

Signed: January 8, 2020

*[signature: W. Carleton Metcalf]*

W. Carleton Metcalf
United States Magistrate Judge

## Time for Objections

The parties are hereby advised that, pursuant to Title 28, United States Code, Section 636(b)(1)(C), and Federal Rule of Civil Procedure 72(b)(2), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the presiding District Judge will preclude the parties from raising such objections on appeal. See Thomas v. Arn, 474 U.S. 140, 140 (1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).